# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GREGORY TUTTLE, o*n behalf of himself and all others similarly situated*,

      Plaintiff,

v.

NEWREZ LLC d/b/a SHELLPOINT
MORTGAGE SERVICING, and TERWIN
MORTGAGE TRUST 2005-3SL, by U.S. Bank
National Association as Trustee,

      Defendants.

Civil Action No. 1:25-cv-00223

## DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES........................................................................... iii

NATURE OF THE MATTER BEFORE THE COURT ................................... 1

STATEMENT OF FACTS ALLEGED .......................................................... 2

STANDARD OF REVIEW............................................................................ 4

ARGUMENT................................................................................................. 5

I. PLAINTIFF'S NCDCA, UDTPA, DECLARATORY JUDGMENT, AND
RESPA CLAIMS FAIL AS A MATTER OF LAW. ................................. 5

    A. Plaintiff's NCDCA, UDTPA, and RESPA Claims fail as a matter of law
because they are entirely predicated on a time-barred and non-existent
TILA claim. .................................................................................. 5

        1. There is no viable TILA claim against Shellpoint or the Trust. ........ 6

        2. Plaintiff's derivative NCDCA, UDTPA, and RESPA claims fail
without a viable underlying TILA claim............................................ 9

            a) NCDCA cannot enforce the nonexistent TILA violation. ...... 9

            b) UDTPA cannot enforce the nonexistent TILA violation...... 11

            c) RESPA cannot enforce the nonexistent TILA violation....... 12

    B. Plaintiff's declaratory judgment claim (Count Five) fails as a matter of law
because there is no actual controversy. ...................................... 12

II. PLAINTIFF'S NCDCA, BREACH OF CONTRACT, AND RESPA CLAIMS
ARE INADEQUATELY PLED.................................................................. 13

    A. Plaintiff fails to state a claim under the NCDCA (Counts One-Four and
Seven)............................................................................................ 14

        1. Plaintiff's alleged violations of N.C.G.S. § 75-54(4) (Counts
Three and Four) fail........................................................................... 14

        2. There is no violation of N.C.G.S. § 75-51(6) (Count Seven). ......... 15

        3. Plaintiff's alleged violations of N.C.G.S. § 75-55(2) (Counts One
and Two) fail. .................................................................................... 15

    B. Plaintiff fails to state a claim under RESPA (Count Nine). ......... 16

        1. Plaintiff fails to allege a RESPA violation...................................... 16

        2. Plaintiff Has Not Sufficiently Pled Actual or Statutory Damages... 17

a)     Plaintiff's alleged damages predated his QWR. .................... 18

b)     Allegations of lost equity, emotional distress, and informational injury are not actual damages under RESPA. ........................................................................ 18

c)     Plaintiff's claim for statutory damages fails as a matter of law. ....................................................................... 20

C.     Plaintiff Fails to State a Claim for Breach of Contract (Count Six) ........... 21

III.     THE CLASS CLAIMS SHOULD BE DISMISSED. ........................................... 23

CONCLUSION ........................................................................................................ 24

CERTIFICATE OF COMPLIANCE ........................................................................ 25

CERTIFICATE OF SERVICE ................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................ 4

*Ayres v. Ocwen Loan Servicing, LLC*,
129 F. Supp. 3d 249 (D. Md. 2015) ...................................................................... 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007) ................................................................................................ 5

*Bennett v. Nationstar Mortg., LLC*,
No. 15-00165-KD-C, 2015 U.S. Dist. LEXIS 119532 (S.D. Ala. Aug.
17, 2015) ............................................................................................................... 20

*Blagogee v. Santander Consumer USA, Inc.*,
No. 1:11-cv-680, 2011 U.S. Dist. LEXIS 155613 (E.D. Va. Nov. 29,
2011) ........................................................................................................................ 8

*Bland v. Carolina Lease Mgmt. Grp., LLC*,
No. 23-1367, 2024 U.S. App. LEXIS 11110 (4th Cir. May 7, 2024) ..................... 11

*Boardley v. Household Fin. Corp. III*,
39 F. Supp. 3d 689 (D. Md. 2014) ........................................................................ 17

*Boone v. Rogers*,
210 N.C. App. 269, 708 S.E.2d 103 (2011) .......................................................... 21

*Camp v. Leonard*,
133 N.C. App. 554, 515 S.E.2d 909 (1999) .......................................................... 21

*Carlson v. Branch Banking and Tr. Co.*,
123 N.C. App. 306, 473 S.E.2d 631 (1996) ..................................................... 21, 22

*Carmichael v. Irwin Mortgage Corp.*,
No. 5:14-CV-122-D, 2014 U.S. Dist. LEXIS 174204 (E.D.N.C. Dec. 17,
2014) ...................................................................................................................... 13

*Collins v. First Fin. Servs.*,
No. 7:14-CV-288-FL, 2016 U.S. Dist. LEXIS 16322 (E.D.N.C. Feb. 10,
2016) ........................................................................................................................ 7

Case 1:25-cv-00223-TDS-LPA    Document 8    Filed 05/20/25    Page 4 of 35

*Crum v. SN Servicing Corp.*,
No. 1:19-cv-02045-JRS-TAB, 2020 U.S. Dist. LEXIS 172358 (S.D. Ind. Sept. 21, 2020) .......................................................................... 9

*Custer v. Dovenmuehle Mortg., Inc.*,
No. 1:24-CV-306, 2024 U.S Dist. LEXIS 189590 (M.D.N.C. Oct. 18, 2024) ................................................................................................ 10

*Delta Fin. Corp. v. Paul D. Comanduras & Assoc.*,
973 F.2d 301 (4th Cir. 1992) ................................................................ 21

*Dreher v. Experian Info. Sols., Inc.*,
856 F.3d 337 (4th Cir. 2017) ................................................................ 20

*DS & T II, Inc., v. D & E Tax & Acct., Inc.*,
2021 NCBC 63 (N.C. Super. Oct. 4, 2021) ......................................... 13

*Earquhart v. Witlatch*,
No. 5:14-CV-248-FL, 2015 U.S. Dist. LEXIS 27088 (E.D.N.C. Mar. 4, 2015) ................................................................................................ 13

*Enriquez v. Countrywide Home Loans, FSB*,
814 F. Supp. 2d 1042 (D. Haw. 2011) ........................................... 11, 12

*Feldman v. Law Enf't Assocs. Corp.*,
779 F. Supp. 2d 472 (E.D.N.C. 2011) .................................................... 4

*Fowler v. Bank of Am., Corp.*,
747 F. App'x 666 (10th Cir. 2018) ....................................................... 19

*Gaitor v. U.S. Bank, N.A.*,
No. 13-80530, Adv. Pro. No. 14-09059, 2015 Bankr. LEXIS 2545 (M.D.N.C. July 31, 2015) ...................................................................... 10

*Gilbert v. Residential Funding LLC*,
678 F.3d 271 (4th Cir. 2012) ................................................................ 12

*Hutten v. Specialized Loan Servicing*,
No. 2:23-CV-31-FL, 2023 U.S. Dist. LEXIS 186502 (E.D.N.C. Oct. 17, 2023) ................................................................................................ 17

*IAR Fam. Tr. v. Suntrust Mortg., Inc.*,
No. 3:13-CV-418-GCM, 2014 U.S. Dist. LEXIS 51256 (W.D.N.C. Apr. 14, 2014) ............................................................................................ 17

iv

*Lambert v. First Horizon Bank*,
No. 3:19-CV-581-RJC-DCK, 2021 U.S. Dist. LEXIS 142635
(W.D.N.C. June 28, 2021) ........................................................................ 16

*Layne v. Nationstar Mortg., LLC*,
No. SA CV 16-2170-DOC, 2017 U.S. Dist. LEXIS 26470 (C.D. Cal.
Feb. 24, 2017) ........................................................................................... 20

*Lee v. Northland Grp.*,
Case No. 02 C 6083, 2003 U.S. Dist. LEXIS 27775 (N.D. Ill. Apr. 24,
2003) .......................................................................................................... 10

*Lewis v. EquityExperts.org, LLC*,
No. 5:22-CV-305-FL, 2023 U.S. Dist. LEXIS 94142 (E.D.N.C. May 31,
2023) .......................................................................................................... 14

*Malcolm v. Seterus, Inc.*,
No. 5:18-CV-01937, 2020 U.S. Dist. LEXIS 50397 (N.D. Ohio Mar. 24,
2020) ..................................................................................................... 20, 21

*Marshall v. Miller*,
302 N.C. 539, 276 S.E.2d 397 (1981) ....................................................... 14

*Mbongo v. Specialized Loan Servicing, LLC*,
No. PJM-15-2941, 2016 U.S. Dist. LEXIS 82832 (D. Md. June 24,
2016) ............................................................................................................ 7

*McInerney v. Pinehurst Area Realty, Inc.*,
162 N.C. App. 285 (2004) ........................................................................ 15

*Morgan v. Bayview Loan Servicing, LLC*,
No. 3:20CV304, 2020 U.S. Dist. LEXIS 212066 (E.D. Va. Nov. 12,
2020) .......................................................................................................... 20

*Morgan v. Caliber Home Loans, Inc.*,
No. 8:19-cv-02797-PX, 2020 U.S. Dist. LEXIS 101648 (D. Md. June
10, 2020) .................................................................................................... 23

*Neff v. Cap. Acquisitions & Mgmt. Co.*,
238 F. Supp. 2d 986 (N.D. Ill. 2002) .......................................................... 9

*Oh v. Ocwen Loan Servicing, LLC*,
No. 18-cv-07214, 2021 U.S. Dist. LEXIS 7450 (N.D. Ill. Jan. 14, 2021).................... 8

v

*Okoro v. Wells Fargo Bank, N.A.*,
    No. PX-16-0616, 2016 U.S. Dist. LEXIS 139630 (D. Md. Oct. 6, 2016)................... 18

*Perry v. Carolina Builders Corp.*,
    128 N.C. App. 143, 493 S.E.2d 814 (1977)................................................. 21

*Pierce v. Ocwen Loan Servicing*,
    No. 1-06CV00147, 2006 U.S. Dist. LEXIS 102018 (M.D.N.C. June 16,
    2006) ............................................................................................ 7

*Plimpton v. Cooper*,
    141 F. Supp. 2d 573 (W.D.N.C. 2001) ........................................................ 12

*Redmond v. Green Tree Servicing, LLC*,
    941 F. Supp. 2d 694 (E.D.N.C. 2013)......................................................... 10

*Register v. N. Sun Hous. & Dev., Inc.*,
    No. 7:04-CV-68-FL, 2005 U.S. Dist. LEXIS 43759 (E.D.N.C. Sept. 2,
    2005) ............................................................................................ 11

*RGK, Inc. v. U.S. Fid. & Guar. Co.*,
    292 N.C. 668, 235 S.E.2d 234 (1977)......................................................... 21

*Richards v. NewRez LLC*,
    No. CV ELH-20-1282, 2021 U.S. Dist. LEXIS 51233 (D. Md. Mar. 18,
    2021) ......................................................................................... 7, 9

*In re Richardson*,
    538 B.R. 594 (Bankr. M.D. Ala. 2015)....................................................... 18

*Rivera v. NCB Mgmt. Servs., Inc.*,
    No. 3:23-CV-00221-MPS, 2023 U.S. Dist. LEXIS 203434 (D. Conn.
    Nov. 14, 2023) ................................................................................ 10

*Scherer v. Steel Creek Prop. Owners Ass'n*,
    682 Fed. Appx. 238 (4th Cir. 2017).......................................................... 14

*Segura v. McBride*,
    5 Cal. App. 4th 1028........................................................................ 19

*Shilo v. Ditech Fin. LLC*,
    No. 16-11564, 2017 U.S. Dist. LEXIS 117629 (D. Mass. July 26, 2017) ................... 8

Case 1:25-cv-00223-TDS-LPA    Document 8    Filed 05/20/25    Page 7 of 35

*Singh v. Wash. Mut. Bank*,
No. C-09-2771-MMC, 2009 U.S. Dist. LEXIS 73315 (N.D. Cal. Aug.
19, 2009) ........................................................................................................... 19

*Soma Tech., Inc. v. Dalamagas*,
2017 NCBC LEXIS 43 (N.C. Super. May 11, 2017) .................................... 13

*Stewart v. Fannie Mae*,
No. 1:24-cv-00730 (BKS), 2024 U.S. Dist. LEXIS 224449 (N.D.N.Y.
Dec. 11, 2024) ................................................................................................ 19

*Sullivan v. Lab. Corp. of Am. Holdings*,
No. 1:17cv193, 2018 U.S. Dist. LEXIS 51689 (M.D.N.C. Mar. 28,
2018) ............................................................................................................... 23

*Tedder v. Deutsche Bank Nat'l Tr. Co.*,
863 F. Supp. 2d 1020 (D. Haw. 2012) ......................................................... 11

*Van Leer v. Deutsche Bank Sec., Inc.*,
479 Fed. App'x 475 (4th Cir. 2012) ............................................................... 5

*Ward v. Sec. Alt. Mortg. Elec. Registration Sys.*,
858 F. Supp. 2d 561 (E.D.N.C. 2012) ............................................................ 8

*Wikimedia Found. v. Nat'l Sec. Agency*,
857 F.3d 193 (4th Cir. 2017) ........................................................................... 5

*Wilson v. loanDepot.com LLC*,
No. 1:20-CV-01175-TCB-WEJ, 2021 U.S. Dist. LEXIS 257564 (N.D.
Ga. Oct. 14, 2021) ......................................................................................... 16

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597 (4th Cir. 2015) ........................................................................... 5

**Statutes**

12 U.S.C. § 2605 ...................................................................................... 16, 17, 20

15 U.S.C. § 1638 ............................................................................................ 6, 8, 9

15 U.S.C. § 1639 ................................................................................................... 9

15 U.S.C. § 1640 ................................................................................................... 6

15 U.S.C. § 1641 ................................................................................................... 8

vii

15 U.S.C. § 1692 .................................................................................................. 9, 10

Chapter 7, U.S. Bankruptcy Code ........................................................................ 2

N.C.G.S. § 45-21.34 ............................................................................................ 13

N.C.G.S. § 75-51 ....................................................................................... 4, 13, 15

N.C.G.S. § 75-54 ........................................................................................... 4, 14

N.C.G.S. § 75-55 ..................................................................................... 4, 10, 15

North Carolina Debt Collection Act ("NCDCA") .................................... *passim*

NCDCA § 75-51 .................................................................................................. 10

NCDCA § 75-52 .................................................................................................. 10

NCDCA § 75-53 .................................................................................................. 10

NCDCA § 75-54 ............................................................................................. 10, 15

Real Estate Settlement Procedures Act ("RESPA") ................................... *passim*

Truth in Lending Act ("TILA") ................................................................... *passim*

Unfair and Deceptive Trade Practice Act ("UDTPA") ............................. *passim*

**Other Authorities**

12 C.F.R. § 1026.41(e)(5) ...................................................................................... 6

Fed. R. Civ. P. 12(b)(6) .................................................................................... 1, 4

Fed. R. Civ. P. 19(a) ........................................................................................... 21

United States Constitution Article III ................................................................. 23

Defendants NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") and Terwin Mortgage Trust 2005-3SL, by U.S. Bank National Association as Trustee ("Trust" and collectively, "Defendants") submit the following memorandum of law in support of their Motion to Dismiss Plaintiff's Class Action Complaint with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## NATURE OF THE MATTER BEFORE THE COURT

Plaintiff Gregory Tuttle ("Plaintiff") seeks to represent three putative classes and brings five class claims and four individual claims, all based on Defendants' alleged failure to provide periodic statements for his discharged second mortgage loan. None of the statutes that Defendants allegedly violated in this lawsuit require periodic statements; only the Truth in Lending Act ("TILA") allegedly imposes any such obligation. Despite referencing and citing TILA throughout the putative Class Action Complaint, however, there is no TILA claim pled in this lawsuit. The reason is plain. Plaintiff knows that a TILA claim would fail as a matter of law because: (1) it is barred by the statute of limitations, (2) mortgage servicers like Shellpoint cannot be liable under TILA as a matter of law, and (3) there is no assignee liability under TILA against the Trust. Undeterred, Plaintiff plugs the round hole of a non-existent TILA violation with the square peg of other causes of action. It does not work.

As explained herein, because Plaintiff's North Carolina Debt Collection Act ("NCDCA"), Unfair and Deceptive Trade Practice Act ("UDTPA") and Real Estate Settlement Procedures Act ("RESPA") claims are based on a time barred and non-viable

TILA claim, there is no actual controversy that would entitle Plaintiff to declaratory relief, and these derivative claims fail as well.

Plaintiff's NCDCA, RESPA, and breach of contract claims also fail for separate and independent reasons: the NCDCA claims (Counts One through Four and Seven) fail because Plaintiff has not plausibly alleged that Defendants committed an unfair act; the RESPA claim (Count Nine) fails because Plaintiff has not plausibly alleged he suffered any damages; and the breach of contract claim (Count Six) fails because Plaintiff's allegations do not establish that there was a breach. This Court should grant Defendant's motion and dismiss Plaintiff's Class Action Complaint ("Complaint") in its entirety.

## STATEMENT OF FACTS ALLEGED[1]

In 1999, Plaintiff built his home in Yadkinville, North Carolina. ECF 1 ¶ 46.[2]  In 2005, Plaintiff refinanced his home using an 80/20 mortgage structure, consisting of a primary traditional mortgage covering 80 percent of the home's appraised value and a second loan to cover the remaining 20 percent of the home's value. *Id.* ¶ 48. Specialized Loan Servicing, LLC ("SLS") serviced the loans from at least 2005 until July 2, 2024.[3] *Id.* ¶ 50. In September 2006, Plaintiff "fell on hard times" and filed for Chapter 7 bankruptcy. *Id.* ¶ 51. Plaintiff alleges he stopped receiving monthly statements for his

---

[1] For the purposes of this Motion, Defendants take the factual allegations in the Complaint as true but reserve the right to contest the factual allegations later in the proceedings.

[2] The Complaint does not allege any facts relating to the original financing of his home.

[3] Shellpoint's ultimate parent company acquired SLS and its portfolio of mortgages in May 2024. For purposes of this Motion, Defendant will refer to only Shellpoint, even if the alleged conduct involved SLS and occurred prior to the acquisition.

second loan in September of 2006. *Id*. ¶ 52. In bankruptcy, Plaintiff filed a Statement of Intention indicating that he would retain his interest in his home and continue to pay the first and second loans "under agreed-upon terms." *Id.* ¶ 53. In early 2007, the second loan was discharged. *Id.* ¶ 54.

In December 2007, Plaintiff modified his first and second loans, "which reaffirmed the debt." *Id.* ¶ 55. Plaintiff nevertheless defaulted on the second loan. *Id.* Plaintiff alleges that he received a letter from Shellpoint in April 2018 informing him that, due to a change in servicing regulations, it would begin sending him monthly statements. *Id*. ¶¶ 57-58. Plaintiff further alleges that, at some unspecified time after April 2018, he started receiving monthly statements from Shellpoint for his second loan. *Id.* ¶ 62.

In 2023, Plaintiff received a foreclosure notice from Shellpoint informing him that his second loan was in default, and he owed the principal balance in the amount of approximately $54,000 plus interest and fees totaling over $20,000, which had accrued during the time period in which he allegedly did not receive statements. *Id*. ¶¶ 49, 62-64. A foreclosure proceeding was subsequently initiated in Yadkin County Superior Court in late 2023. *Id.* ¶ 65. Plaintiff alleges he sent a qualified written request ("QWR") to Shellpoint in October 2023 asking it to stop attempting to collect the accrued interest and fees on the second loan, which Plaintiff alleges were improperly charged. *Id.* ¶¶ 66-68. In response, Shellpoint stated that it was entitled to enforce the lien on Plaintiff's property for the full amount requested. *Id*. ¶ 69.

3

Plaintiff alleges that, as a result of Shellpoint's conduct, he has lost approximately $20,000 of equity in his home and has suffered significant emotional distress from the fear of losing his home. *Id*. ¶ 71.

On March 20, 2025, Plaintiff filed the Complaint against Shellpoint and the Trust in this Court, raising five class causes of action: Counts One & Two: Violations of the NCDCA, N.C.G.S. § 75-55(2) (against Shellpoint and the Trust); Counts Three & Four: Violations of the NCDCA, N.C.G.S. § 75-54(4) (against Shellpoint and the Trust); and Count Five: Declaratory Judgment (against the Trust). The Complaint raises four individual causes of action: Count Six: Breach of Contract (against the Trust);[4] Count Seven: Violation of the NCDCA, N.C.G.S. § 75-51(6) (against Shellpoint and the Trust); Count Eight: UDTPA (against Shellpoint and the Trust); and Count Nine: Violation of RESPA (against Shellpoint).

Defendants now move to dismiss the Complaint in its entirety with prejudice.

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[4] A copy of the deed of trust ("Deed of Trust"), which Plaintiff alleges is the contract that was breached, is attached hereto as Exhibit A. The Court can consider the Deed of Trust without turning the motion to dismiss into a motion for summary judgment because the deed of trust is a publicly filed document that is incorporated by reference into the Complaint. *Feldman v. Law Enf't Assocs. Corp.*, 779 F. Supp. 2d 472, 486 n.8 (E.D.N.C. 2011) ("The matters which a court may consider on a Rule 12(b)(6) motion without converting it into one for summary judgment include documents appearing in the record of the case, matters of public record, items subject to judicial notice, matters incorporated by reference into the complaint, and exhibits attached to the complaint whose authenticity is unquestioned.").

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).   A complaint must plead more than labels or a formulaic recitation of the elements of a cause of action.   *Twombly*, 550 U.S. at 555.   "[L]egal conclusions pleaded as factual allegations, unwarranted inferences, unreasonable conclusions, and naked assertions devoid of further factual enhancement are not entitled to the presumption of truth."   *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (internal quotation marks omitted).   The facts alleged must demonstrate facial plausibility, which requires more than the "sheer possibility" of liability or allegations "merely consistent with" liability.   *Van Leer v. Deutsche Bank Sec., Inc.*, 479 Fed. App'x 475, 479 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 557).   The Court may also consider information that is "subject to judicial notice without converting the motion to dismiss into one for summary judgment."   *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).

## ARGUMENT

I.   **PLAINTIFF'S NCDCA, UDTPA, DECLARATORY JUDGMENT, AND RESPA CLAIMS FAIL AS A MATTER OF LAW.**

A.   **Plaintiff's NCDCA, UDTPA, and RESPA Claims fail as a matter of law because they are entirely predicated on a time-barred and non-existent TILA claim.**

Plaintiff brings claims for alleged violations of NCDCA, UDTPA, and RESPA, all based on the same conduct – that Shellpoint deceived him by assessing interest on his second loan for periods in which no monthly statements were sent.  *See* ECF 1 ¶¶ 78, 90, 102, 114, 200.  Conspicuously absent from any of these statutes, however, is any obligation for a mortgage servicer to provide periodic monthly statements to a borrower.  As Plaintiff

5

acknowledges, that obligation is found in TILA, and only in TILA.[5]  *See id.* ¶ 15 (citing

15 U.S.C. § 1638(f)).  But because there is no viable TILA claim, Plaintiff's derivative

claims under NCDCA, UDTPA, and RESPA fail as a matter of law and cannot give rise

to an actual controversy that warrants a declaratory judgment.

### 1.    *There is no viable TILA claim against Shellpoint or the Trust.*

Despite claiming that his claims are based on conduct in violation of TILA,

Plaintiff has elected ***not*** to plead a direct TILA violation.  The reasons are plain.

***First***, TILA has a one-year statute of limitations, 15 U.S.C. § 1640(e), and the last

alleged violation occurred sometime after April 2018, when Plaintiff finally received a

statement.  Plaintiff does not specify when exactly he began receiving statements, but

acknowledges that he received the notice of default in May 2023 **<u>after</u>** the statements

resumed.  *See* ECF 1, ¶ 64.  Taking May 2023 as the latest potential violation date, any

TILA claim that could have been asserted in the Complaint—filed March 20, 2025—is

time-barred.

---

[5] Prior to April 18, 2018, 12 C.F.R. § 1026.41(e)(5) did not require a servicer to send periodic statements for closed end mortgages (like Plaintiff's) to consumers in bankruptcy.  Effective April 18, 2018, 12 C.F.R. § 1026.41(e)(5) was amended to add a requirement that servicers send periodic mortgages for closed end mortgages to consumers in bankruptcy if certain conditions were not met. Plaintiff concedes this in his Complaint.  ECF 1, ¶ 6 ("At the time of Plaintiff's bankruptcy, [TILA] and its enacting regulation, 'Regulation Z,' did not require servicers to send statements to mortgages discharged through bankruptcy.  But in April 2018, the Consumer Financial Protection Bureau ('CFPB') changed Regulation Z to require that statements be sent even to those whose debt was discharged so long as the debtor still retained an interest in the underlying property that was subject to foreclosure[.]").  Therefore, any potential period of a TILA violation (if one exists) is the period of time from April 2018 until the date Plaintiff began receiving statements.

**Second**, TILA provides liability for "creditors" who fail to comply with the statute, and it is well-settled that mortgage servicers that do not own loans (like Shellpoint and its predecessor SLS) are not "creditors" and therefore cannot be held liable under TILA.[6]  *See Pierce v. Ocwen Loan Servicing*, No. 1-06CV00147, 2006 U.S. Dist. LEXIS 102018, at *11 (M.D.N.C. June 16, 2006) (dismissing TILA claim, explaining that "as a loan servicer, and not a lender, Defendant is excepted from liability under TILA"); *Collins*, 2016 U.S. Dist. LEXIS 16322 at *50-51 (dismissing TILA claim against mortgage servicer because plaintiff did not allege that the servicer was "the person initially payable on the face of the subject loan"); *Richards v. NewRez LLC*, No. CV ELH-20-1282, 2021 U.S. Dist. LEXIS 51233, at *68-69 (D. Md. Mar. 18, 2021) ("Shellpoint is *not* . . . the owner of the obligation, so it does not constitute a 'creditor' under TILA.  Therefore, Shellpoint has no liability for alleged TILA violations."); *Mbongo v. Specialized Loan Servicing, LLC*, No. PJM-15-2941, 2016 U.S. Dist. LEXIS 82832 at *14 (D. Md. June 24, 2016) (dismissing TILA claim against SLS (Shellpoint's predecessor) because "SLS does not qualify as a 'creditor' under the TILA").  Because Plaintiff does not (and cannot) allege that Shellpoint or SLS were ever the owner of his second loan, they are merely servicers to which TILA liability does not extend.  *See* ECF 1 ¶ 50.  Therefore, there is no viable TILA claim against Shellpoint.

---

[6] The Trust is also not a creditor under TILA.  "'Creditor' is defined as 'the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness.'"  *Collins v. First Fin. Servs.*, No. 7:14-CV-288-FL, 2016 U.S. Dist. LEXIS 16322, at *50-51 (E.D.N.C. Feb. 10, 2016) (citing 15 U.S.C. § 1602(g)).  There is no dispute that on the face of the second loan, the person to whom the debt is initially payable to is Dream House Mortgage Corporation, not the Trust.  *See* Ex. A (identifying Dream House Mortgage Corporation as the lender).  Therefore, the Trust cannot be liable as a "creditor" under TILA either.

*Third,* any TILA claims against the Trust fail because the Trust is not a "creditor" and does not have liability as an assignee of the creditor. A TILA claim "may be maintained against any assignee of such creditor only when the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a); *see also Ward v. Sec. Alt. Mortg. Elec. Registration Sys.*, 858 F. Supp. 2d 561, 569 (E.D.N.C. 2012) (citing 15 U.S.C. § 1641(a)). "[T]he relevant inquiry [in determining assignee liability] is whether a reasonable person can spot any violations on the face of the disclosure statement or other assigned documents." *Blagogee v. Santander Consumer USA, Inc.*, No. 1:11-cv-680, 2011 U.S. Dist. LEXIS 155613, at *5 (E.D. Va. Nov. 29, 2011).

There is no "violation" that is "apparent on the face of the disclosure statement." As an initial matter, Plaintiff does not allege a violation in the mortgage origination documents. More importantly, failure to send mortgage statements does not constitute a violation on the face of the disclosure statements either. *See Oh v. Ocwen Loan Servicing, LLC*, No. 18-cv-07214, 2021 U.S. Dist. LEXIS 7450, at *12 (N.D. Ill. Jan. 14, 2021) (dismissing TILA claim against an assignee, explaining that "[Plaintiffs] do not allege that violations of [TILA] are 'apparent on the face of the disclosure statement' as required by § 1641, nor could they, as the failure to provide periodic statements and to timely credit payments would not appear in the disclosure statement"); *see also Shilo v. Ditech Fin. LLC*, No. 16-11564, 2017 U.S. Dist. LEXIS 117629, at *19 (D. Mass. July 26, 2017), *aff'd*, No. 17-1884, 2018 U.S. App. LEXIS 38749 (1st Cir. May 22, 2018) ("The fact that the periodic statement requirement is not part of § 1638(a) demonstrates that Congress did not intend

8

for periodic statements to be considered 'disclosure statements' under TILA . . . "); *Crum v. SN Servicing Corp.*, No. 1:19-cv-02045-JRS-TAB, 2020 U.S. Dist. LEXIS 172358, at *7-8 (S.D. Ind. Sept. 21, 2020) ("Neither a failure to timely credit received loan payments as required by § 1639f nor a failure to transmit periodic statements as required by § 1638(f) involves the disclosure statement . . . ").  Since an alleged failure to provide statements is not a violation apparent on the face of a disclosure, the Trust cannot be liable under TILA.

## 2. Plaintiff's derivative NCDCA, UDTPA, and RESPA claims fail without a viable underlying TILA claim.

As a workaround, Plaintiff improperly packages a time-barred and non-existent TILA claim under the NCDCA, UDTPA, and RESPA.  Courts have routinely rejected such machinations, and the Court should reject Plaintiff's attempts here.

### a) NCDCA cannot enforce the nonexistent TILA violation.

A debt collection statute cannot be used to enforce TILA.  In *Richards*, for example, the District of Maryland dismissed an FDCPA claim because that statute "'is not properly used as an enforcement mechanism for the TILA,' especially where the plaintiffs could not succeed on a TILA claim, independently."  2021 U.S. Dist. LEXIS 51233, at *69 (dismissing FDCPA claims when "Plaintiffs allege[d] that defendant violated 15 U.S.C. § 1692f by collecting fees and charges when it failed to provide timely periodic statements, as required by the TILA, 15 U.S.C. § 1638(f)") (citation omitted); *see also id. Neff v. Cap. Acquisitions & Mgmt. Co.*, 238 F. Supp. 2d 986, 993 (N.D. Ill. 2002), *aff'd*, 352 F.3d 1118 (7th Cir. 2003) ("Because there is no affirmative obligation under the FDCPA to send monthly statements, and Neff does not allege deceptive or unfair practices independent of

9

defendants' alleged TILA obligations, counts III and IV fail to state a claim upon which relief can be granted and therefore are dismissed."); *Lee v. Northland Grp.*, Case No. 02 C 6083, 2003 U.S. Dist. LEXIS 27775, at *4-5 (N.D. Ill. Apr. 24, 2003) ("Lee's FDCPA and [Illinois Consumer Fraud Act] claims are entirely predicated on her nonexistent TILA violation, and thus those claims must also be dismissed."); *see also see also Rivera v. NCB Mgmt. Servs., Inc.*, No. 3:23-CV-00221-MPS, 2023 U.S. Dist. LEXIS 203434, at *18 (D. Conn. Nov. 14, 2023) ("NCB is not, however, subject to TILA's requirements because TILA only regulates creditors . . . . courts have repeatedly concluded that a debt collector is not a creditor subject to the requirements of the TILA.").

The NCDCA serves the same purpose as its federal counterpart, FDCPA. *Compare* 15 U.S.C. § 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors…") *with Custer v. Dovenmuehle Mortg., Inc.*, No. 1:24-CV-306, 2024 U.S Dist. LEXIS 189590, at *3-4 (M.D.N.C. Oct. 18, 2024) (explaining the NCDCA prohibits debt collectors from "using threats and coercion, § 75-51, harassment, § 75-52, unreasonable publication, § 75-53, deceptive representation, § 75-54, or unconscionable means, § 75-55, to collect a debt"); *see also Gaitor v. U.S. Bank, N.A.*, No. 13-80530, Adv. Pro. No. 14-09059, 2015 Bankr. LEXIS 2545, at *9 n.2 (M.D.N.C. July 31, 2015) (noting the similarities between the FDCPA and the NCDCA); *Redmond v. Green Tree Servicing, LLC*, 941 F. Supp. 2d 694, 698 (E.D.N.C. 2013) ("[T]he North Carolina Court of Appeals has looked to the similarly constructed [FDCPA] in construing [NCDCA].").  Thus, the prohibition on litigants from using the FDCPA to

10

enforce TILA applies with equal force to the NCDCA. The Court should dismiss Counts One through Four and Seven.

### b) UDTPA cannot enforce the nonexistent TILA violation.

Similarly, courts have rejected plaintiffs' attempts to bring barred TILA claims under UDTPA. In *Register v. N. Sun Hous. & Dev., Inc.*, No. 7:04-CV-68-FL, 2005 U.S. Dist. LEXIS 43759, at *32 (E.D.N.C. Sept. 2, 2005), *aff'd sub nom. Reg. v. Flagstar Bank*, 205 F. App'x 154 (4th Cir. 2006), the court dismissed a UDTPA claim based on a defendant's failure to disclose certain financing information because there was no viable underlying TILA claim:

> In this case, where plaintiffs' [UDTPA] claim against defendants Equiplus and Flagstar is based solely upon violations addressed in plaintiffs' other claims, which the court has rejected on their merits or on the basis of statute of limitations, the court finds plaintiffs' [UDTPA] claim meritless. In particular, two cases in North Carolina have held that unfair trade practices claim could not be based upon violations of other federal statutes providing pervasive regulation of a particular area of law. The court finds these cases persuasive in the present context, which involves application of specific statutory disclosure requirements under TILA and North Carolina statutes.

*Id.* (internal citations omitted); *see also Bland v. Carolina Lease Mgmt. Grp., LLC*, No. 23-1367, 2024 U.S. App. LEXIS 11110, at *6 (4th Cir. May 7, 2024) (recognizing that "the *Register* court's decision appears to have primarily depended on the district court's conclusion that the plaintiffs couldn't base a UDTPA claim on a TILA violation"); *Tedder v. Deutsche Bank Nat'l Tr. Co.*, 863 F. Supp. 2d 1020, 1025 (D. Haw. 2012) (granting dismissal to similar Hawaii state statute where "Plaintiff allege[d] that Defendants committed unfair and deceptive acts or practices ('UDAP') by violating various TILA provisions," and TILA claims failed); *Enriquez v. Countrywide Home Loans, FSB*, 814 F.

Supp. 2d 1042, 1063–64 (D. Haw. 2011) ("[T]he portion of Plaintiff's UDAP claim based on alleged TILA [] violations fails to state a plausible UDAP claim."); *cf. Gilbert v. Residential Funding LLC*, 678 F.3d 271, 280 (4th Cir. 2012) (recognizing that where it was held that certain claims of violations of the TILA should go forward and are supported by a sufficient factual basis for these claims, the UDTPA claims should be allowed to proceed as well). Similarly here, Plaintiff cannot base his UDTPA claim on a TILA violation and the Court should dismiss Count Eight.

### c) RESPA cannot enforce the nonexistent TILA violation.

Lastly, like NCDCA and UDTPA, RESPA does not place an affirmative obligation on mortgage servicers to provide monthly statements; that obligation comes from TILA and TILA only. Plaintiff alleges that Shellpoint violated RESPA because it violated TILA, which as stated, Shellpoint cannot do by law, and the RESPA claim should be dismissed.

### B. Plaintiff's declaratory judgment claim (Count Five) fails as a matter of law because there is no actual controversy.

Plaintiff seeks a declaration that, because the Trust failed to provide statements in violation of TILA, the Trust has waived the fees and interest assessed to Plaintiff's loan during the period which statements were not sent. ECF 1, ¶ 129. As discussed above, because there is no viable TILA claim against the Trust, and by consequence, no derivative NCDCA claims or UDTPA claim, there is no "actual controversy" between the parties, and thus, Plaintiff's declaratory judgment claim fails as a matter of law. *See, e.g., Plimpton v. Cooper*, 141 F. Supp. 2d 573, 576 (W.D.N.C. 2001), *aff'd*, 21 F. App'x 159 (4th Cir. 2001) (explaining "a declaratory judgment action is a procedural device used to vindicate

12

substantive rights" and "as such, it is barred to the same extent that the claim for substantive relief on which it is based would be barred"); *DS & T II, Inc., v. D & E Tax & Acct., Inc.*, 2021 NCBC 63, at *63 (N.C. Super. Oct. 4, 2021) (dismissing claim for declaratory relief "because . . . [the] underlying claims fail[ed] as a matter of law"); *Soma Tech., Inc. v. Dalamagas*, 2017 NCBC LEXIS 43, at *28 (N.C. Super. May 11, 2017) (holding that "because each of [plaintiff's] substantive claims for relief must be dismissed, "each of the equitable remedies [plaintiff] seeks to redress [d]efendants' alleged wrongdoing," including declaratory relief, "must also be dismissed").

Because there is no actionable TILA claim—the statute on which Plaintiff's contentions depend—no Defendant has wronged Plaintiff, and the requisite controversy has not arisen. Granting the requested declaration based on the Trust's non-violation of TILA would amount to an impermissible advisory opinion. Plaintiff merely cloaks his TILA claim as a request for declaratory judgment, and the claim should be dismissed.

## II. PLAINTIFF'S NCDCA, BREACH OF CONTRACT, AND RESPA CLAIMS ARE INADEQUATELY PLED.[7]

Even if Plaintiff's NCDCA and RESPA claims are not legally barred (as argued above), they nevertheless should be dismissed because they are inadequately pled. Plaintiff's breach of contract is also inadequately pled and should be dismissed.

---

[7] As part of the relief sought for Count Six (Breach of Contract), Count Seven (Violation of N.C.G.S. § 75-51(6)), and Count Eight (Unfair and Deceptive Trade Practices), Plaintiff seeks an order enjoining the foreclosure of his home pursuant to N.C.G.S. § 45-21.34. ECF 1, ¶¶ 198, 203, 209. However, such relief is not available to Plaintiff because federal courts do not have the authority to enjoin state foreclosure proceedings. *See Earquhart v. Witlatch*, No. 5:14-CV-248-FL, 2015 U.S. Dist. LEXIS 27088, at *3 (E.D.N.C. Mar. 4, 2015) (reasoning that *Younger* abstention requires the court to refrain from interference with pending state court civil proceedings related to the foreclosure); *Carmichael v. Irwin Mortgage Corp.*, No. 5:14-CV-122-D, 2014 U.S.

13

**A. Plaintiff fails to state a claim under the NCDCA (Counts One-Four and Seven).**

To state a claim for relief under NCDCA, a plaintiff must plead "(1) an unfair act (2) in or affecting commerce (3) proximately causing injury." *Lewis v. EquityExperts.org, LLC*, No. 5:22-CV-305-FL, 2023 U.S. Dist. LEXIS 94142, at *16 (E.D.N.C. May 31, 2023) (citing *Ross v. F.D.I.C.*, 625 F.3d 808, 817 (4th Cir. 2010)). An act is unfair "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). For the reasons discussed below, Plaintiff's NCDCA claims each fail because he has not alleged that Defendants committed an unfair act.

**1. Plaintiff's alleged violations of N.C.G.S. § 75-54(4) (Counts Three and Four) fail.**

As to Plaintiff's claim under N.C.G.S. § 75-54(4) specifically, Plaintiff asserts that Defendants' conduct was deceptive because they falsely represented to Plaintiff that he owed late fees and/or interest for the months that he allegedly was not sent monthly statements. ECF 1, ¶¶ 102-104. The Fourth Circuit has held that this conduct does not fall under the proscription on falsely representing the character of a debt. *See Scherer v. Steel Creek Prop. Owners Ass'n*, 682 Fed. Appx. 238, 240 (4th Cir. 2017) ("As to their remaining NCDCA claim, [plaintiffs] asserted that [defendant] incorrectly stated in a 2013

---

Dist. LEXIS 174204, at *9 (E.D.N.C. Dec. 17, 2014) ("[I]f plaintiffs want[] to enjoin the foreclosure sale, they need[] to bring an action in North Carolina Superior Court under N.C. Gen. Stat. § 45-21.34.").

letter that the assessments were past due and had accrued interest. Even assuming this to be true, such conduct does not fall within § 75-54(4)'s proscription on falsely representing the character of a debt."). As Plaintiff cannot sufficiently allege the requirements for a § 75-54 claim, Counts Three and Four must be dismissed.

### 2. There is no violation of N.C.G.S. § 75-51(6) (Count Seven).

N.C.G.S. § 75-51(6) prohibits debt collectors from collecting or attempting to collect any debt "by means of any unfair threat, coercion, or attempt to coerce," including "[r]epresenting that nonpayment of an alleged debt may result in the seizure, garnishment, attachment, or sale of any property or wages unless such action is in fact contemplated by the debt collector and permitted by law."

There is no violation because the Deed of Trust specifically authorized Defendants' actions. Plaintiff asserts that Defendants violated the statute because they represented that the nonpayment of the second loan may result in the sale of Plaintiff's home when such a sale is not permitted by law. But the Deed of Trust specifically authorizes the loan servicer to accelerate the debt upon notice of default and opportunity to cure. *See* Ex. A, ¶ 17; *McInerney v. Pinehurst Area Realty, Inc.*, 162 N.C. App. 285, 291 (2004) (holding that defendant's actions did not constitute as "unfair" within the meaning of Chapter 75 because defendant was exercising a right that was authorized under the parties' restrictive covenants). Count Seven must be dismissed.

### 3. Plaintiff's alleged violations of N.C.G.S. § 75-55(2) (Counts One and Two) fail.

Plaintiff's N.C.G.S. § 75-55 claim fails for the reasons discussed in Section I.A.1,

*supra*, that TILA does not apply to Defendants and, therefore, Plaintiff has not alleged conduct constituting an unfair act under the NCDCA. Counts One and Two must be dismissed.

### B.    Plaintiff fails to state a claim under RESPA (Count Nine).

Plaintiff's RESPA claim also fails for the separate and independent reason that he did not plausibly allege he suffered any damages sufficient to survive dismissal.

#### 1.    *Plaintiff fails to allege a RESPA violation.*

Plaintiff alleges that he sent a qualified written request ("QWR") to Shellpoint and that Shellpoint responded to Plaintiff, but because Shellpoint failed to remove the interest and fees from Plaintiff's account which Plaintiff contends he does not owe, Shellpoint thereby did not conduct a reasonable investigation in response to the QWR and violated § 2605(e)(2) of RESPA.

Plaintiff's theory rests on the assertion that Shellpoint violated RESPA by failing to correct the amount owed on his account after Plaintiff notified Shellpoint. *See* ECF 1, ¶ 211 ("Shellpoint violated 12 U.S.C. § 2605(e)(2) by failing to make appropriate corrections to Plaintiff's account in response to his [QWR].").[8] However, a servicer may comply with

---

[8] To the extent Plaintiff argues Shellpoint's failure to conduct a reasonable investigation rises to a violation of RESPA, ECF 1, ¶ 213, such a claim fails because RESPA merely requires the servicer to conduct "an investigation," 12 U.S.C. §§ 2605(e)(2)(B), (C), and Plaintiff concedes Shellpoint conducted an investigation. Plaintiff simply disagrees with the outcome of the investigation, and therefore argues the investigation was "unreasonable." *See Lambert v. First Horizon Bank*, No. 3:19-CV-581-RJC-DCK, 2021 U.S. Dist. LEXIS 142635, at *31 (W.D.N.C. June 28, 2021) ("[E]ven if [p]laintiff is not satisfied with the content of the [QWR] response, if Defendant at minimum did respond either with the information requested or an explanation of why such information was not obtainable . . . then Defendant has satisfied RESPA's requirements and any claim for violation of the statute will fail."); *Wilson v. LoanDepot.com LLC*, No. 1:20-CV-01175-TCB-WEJ, 2021 U.S. Dist. LEXIS 257564, at *10 (N.D. Ga. Oct. 14, 2021) ("[P]laintiff's

§ 2605(e)(2) either by correcting the account or by explaining why it believes the account is already correct. *See* 12 U.S.C. §§ 2605(e)(2)(A), (B), (C); *see, e.g., Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d 689, 701 (D. Md. 2014). Plaintiff alleges that Shellpoint failed to correct the amount owed, but Plaintiff does not allege that Shellpoint failed to explain why it believed the account was already correct or failed to otherwise comply with the statute. "A failure to make appropriate corrections, as provided for in § 2605(e)(2)(A), is not necessarily a violation of § 2605(e)(2), as the servicer may have complied with subsection (B) or (C) instead." *Hutten v. Specialized Loan Servicing*, No. 2:23-CV-31-FL, 2023 U.S. Dist. LEXIS 186502, at *27 (E.D.N.C. Oct. 17, 2023). In other words, even if Shellpoint did not make any modifications to Plaintiff's account pursuant to § 2605(e)(2), that does not mean a RESPA violation has been pled. Plaintiff merely disagrees with the outcome of Shellpoint's investigation, which is insufficient to assert liability under RESPA.

### 2. *Plaintiff Has Not Sufficiently Pled Actual or Statutory Damages.*

Plaintiff's RESPA claim suffers from a failure to plead damages stemming from an alleged RESPA violation. *See IAR Fam. Tr. v. Suntrust Mortg., Inc.*, No. 3:13-CV-418-GCM, 2014 U.S. Dist. LEXIS 51256, at *10-11 (W.D.N.C. Apr. 14, 2014) (dismissing RESPA claim because "the Complaint fail[ed] to demonstrate that [borrower] ha[d] suffered any damages *as a result of Defendants' alleged failure to respond to his [QWR] letter*, which is required to maintain a claim under RESPA" (emphasis added)).

---

dissatisfaction or disagreement with the servicer's investigation is insufficient to state a RESPA claim[.]").

17

### a) Plaintiff's alleged damages predated his QWR.

Plaintiff's alleged damages predated his QWR and thus cannot be the basis for a RESPA claim. Federal courts routinely dismiss RESPA claims for failure to show actual damages where a plaintiff alleges harm that "*predate[s] the alleged RESPA violations*" or is attributable to another underlying cause. *See, e.g., Okoro v. Wells Fargo Bank, N.A.*, No. PX-16-0616, 2016 U.S. Dist. LEXIS 139630, at *34 (D. Md. Oct. 6, 2016), *aff'd*, 684 F. App'x 324 (4th Cir. 2017) (emphasis in original); *In re Richardson*, 538 B.R. 594, 610 (Bankr. M.D. Ala. 2015) (dismissing claim where borrower "had already suffered the damages referred to elsewhere in the amended complaint long before they sent" QWR).

Here, Plaintiff alleges harm in the form of "lost equity, informational injury, and emotional distress" resulting from Shellpoint's failure to remove interest and fees from his account which Plaintiff alleges are improper. ECF 1, ¶¶ 211, 215. These interest and fees were assessed to Plaintiff's account at least five months *before* Plaintiff sent the QWR. *Id.* ¶ 12 (alleging Plaintiff sent the QWR to Shellpoint in **October 2023**); ¶¶ 62-65 (alleging Plaintiff began receiving statements with accrued interest and fees and received a notice of default in **May 2023** intending to foreclose on his home if he did not pay the "inflated balance"). Because Plaintiff has not alleged facts showing how he might have been damaged by any alleged RESPA violation, his RESPA claim must be dismissed.

### b) Allegations of lost equity, emotional distress, and informational injury are not actual damages under RESPA.

Plaintiff makes the conclusory allegation that he lost equity in his home. ECF 1, ¶ 215. However, because the foreclosure sale has not occurred, Plaintiff has not suffered any

lost equity and his damages allegations are merely speculative and insufficient to survive a motion to dismiss. *See Segura v. McBride*, 5 Cal. App. 4th 1028, 1038-39 ("When it is 'lost' equity that is sought, by definition the equity is valued at the very precise point in time when it is lost to someone else. Once a homeowner loses his or her equity *through an unfair transfer or sale*, there is no more equity in the hands of the equity seller to be valued." (emphasis added)); *Stewart v. Fannie Mae*, No. 1:24-cv-00730 (BKS), 2024 U.S. Dist. LEXIS 224449 at *14 (N.D.N.Y. Dec. 11, 2024) (acknowledging that the borrower "lost equity in the property *at the time of the foreclosure sale*" (emphasis added)).

Moreover, Plaintiff's conclusory allegation that he suffered "emotional distress, including aggravation and distress," ECF 1, ¶ 215, fails to show *how* the alleged damages flow from Shellpoint's alleged failure to correct the account and thus are insufficient. *See Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 266 (D. Md. 2015) (dismissing RESPA claim where plaintiff failed to identify "how these [actual] damages flowed directly from [the servicer's] failure to respond"); *see also Singh v. Wash. Mut. Bank*, No. C-09-2771-MMC, 2009 U.S. Dist. LEXIS 73315, at *16 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim where plaintiffs did not "allege any facts in support of their conclusory [damages] allegation"); *Fowler v. Bank of Am., Corp.*, 747 F. App'x 666, 670 (10th Cir. 2018) (affirming dismissal of RESPA claim for failure to "allege a sufficient causal connection" between the alleged damages and the violation). Plaintiff's failure to explain how his general allegations of emotional distress stemmed from the alleged RESPA violation is fatal to his claim for damages.

19

Lastly, Plaintiff's claimed informational injury is insufficient. An informational injury constitutes a concrete injury under RESPA when it results in a "real harm with an adverse effect." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017). For the same reasons discussed above, Plaintiff has failed to allege that he suffered any real harm or adverse effect from the alleged RESPA violation.

        **c)**       **Plaintiff's claim for statutory damages fails as a matter of law.**

Plaintiff's claim for statutory damages likewise fails. First, "[t]he weight of authority requires a borrower to first recover actual damages before recovering statutory damages." *Morgan v. Bayview Loan Servicing, LLC*, No. 3:20CV304, 2020 U.S. Dist. LEXIS 212066, at *5 n.6 (E.D. Va. Nov. 12, 2020) (collecting cases). For the reasons discussed in Sections II.B.1.a and II.B.1.b, Plaintiff has not shown actual damages, and thus cannot recover statutory damages. Second, RESPA permits plaintiffs to claim statutory damages only if a defendant has "a pattern or practice of noncompliance." 12 U.S.C. § 2605(f). The weight of authority has refused to accept pending or settled lawsuits or consumer complaints as evidence of "a pattern or practice of noncompliance." *See Bennett v. Nationstar Mortg., LLC*, No. 15-00165-KD-C, 2015 U.S. Dist. LEXIS 119532, at *33 (S.D. Ala. Aug. 17, 2015) (holding "[consumer] complaints do not equate to 'noncompliance'"); *Layne v. Nationstar Mortg., LLC*, No. SA CV 16-2170-DOC, 2017 U.S. Dist. LEXIS 26470, at *11 (C.D. Cal. Feb. 24, 2017) (finding allegations that defendant had numerous lawsuits against them did not support a pattern of noncompliance with RESPA); *Malcolm v. Seterus, Inc.*, No. 5:18-CV-01937, 2020 U.S. Dist. LEXIS

20

50397, at *19 (N.D. Ohio Mar. 24, 2020). As Plaintiff alleges other pending and/or settled lawsuits and consumer complaints as the only support for Shellpoint's alleged pattern or practice of noncompliance, ECF 1, ¶¶ 216-219, he has not plausibly alleged he is entitled to statutory damages.

### C.   Plaintiff Fails to State a Claim for Breach of Contract (Count Six)[9]

Plaintiff's breach of contract claim should be dismissed because he has failed to (1) identify an express provision of the Deed of Trust that the Trust breached, and (2) plead any allowable damages directly resulting from the breach as required to assert a breach of contract claim. To state an action for breach of contract, a plaintiff must allege: (1) the existence of a valid contract between the parties; (2) the specific provision breached; (3) the facts amounting to the breach; and (4) the amount of damages resulting from the breach. *RGK, Inc. v. U.S. Fid. & Guar. Co.*, 292 N.C. 668, 675, 235 S.E.2d 234, 238 (1977). Further, the rights and duties of the parties to a loan transaction are controlled solely by the terms of the promissory note and deed of trust, and the lender and its assignees are only obligated to perform those duties expressly provided for in the loan agreement to which it is a party. *See Camp v. Leonard*, 133 N.C. App. 554, 560, 515 S.E.2d 909, 913 (1999); *Perry v. Carolina Builders Corp.*, 128 N.C. App. 143, 493 S.E.2d 814 (1977); *Carlson v.*

---

[9] The Deed of Trust is signed by both Plaintiff and his wife, "Sarah Leandra A. Tuttle." *See* Ex. A. Yet, Ms. Tuttle is not a named party in the Complaint. As a co-owner of the property and co-signor on the contract that serves as the basis for Plaintiff's claims, she is a necessary party that must be joined in this action pursuant to Fed. R. Civ. P. 19(a). *See Delta Fin. Corp. v. Paul D. Comanduras & Assoc.*, 973 F.2d 301, 305-06 (4th Cir. 1992) (holding a party to a contract is a necessary party to a suit on that contract); *Boone v. Rogers*, 210 N.C. App. 269, 272, 708 S.E.2d 103, 106 (2011) (holding the co-owner of real property is a necessary party in a suit directly affecting her interest in the property).

*Branch Banking and Tr. Co.*, 123 N.C. App. 306, 473 S.E.2d 631 (1996), *disc. review denied*, 345 N.C. 340, 483 S.E.2d 162 (1997).

Plaintiff fails to identify any terms within the Deed of Trust that were allegedly breached or how the breach occurred. Section 17 of the Deed of Trust provides the following:

> [U]pon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower . . . specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property.

Ex. A, ¶ 17. Plaintiff does not allege that the Trust never sent a notice, or that the notice did not specify the breach or the action required to cure the breach. Plaintiff also does not allege that the notice failed to specify a date by which such breach must be cured and that failure to cure such breach may result in acceleration of the debt. Plaintiff merely alleges the notice was inaccurate because it included fees and interest that Plaintiff contends should not have been charged. ECF 1, ¶ 192. On its face, such allegations are insufficient to warrant a breach under the terms of the Deed of Trust and accordingly, Plaintiff's breach of contract claim must fail.[10]

Moreover, Plaintiff has failed to identify damages resulting from the alleged breach. Plaintiff alleges the breach caused him to suffer "actual damages, including the assessment

---

[10] And even if these deficiencies are cured, Plaintiff cannot allege that there was a breach because the Trust complied with all requirements and preconditions to foreclosure.

22

of fees and costs that he does not owe." *Id*. ¶ 195. Notably, Plaintiff does not allege that the foreclosure sale has occurred, he only alleges foreclosure proceedings have been initiated. As Plaintiff has not paid the "fees and costs" that were assessed to his account, he is not damaged by the alleged breach, and his claim must be dismissed.

## III. THE CLASS CLAIMS SHOULD BE DISMISSED.

As discussed above, Plaintiff has no viable claims; therefore, the claims brought on behalf of the class should be dismissed as well. *Sullivan v. Lab. Corp. of Am. Holdings*, No. 1:17cv193, 2018 U.S. Dist. LEXIS 51689, at *32 (M.D.N.C. Mar. 28, 2018) (dismissing class claims as moot after the named plaintiffs' claims were dismissed on the merits for failure to state a claim upon which can be granted because there was "no case or controversy under Article III of the United States Constitution"). Here, because the claims fail, no putative class member can replace Plaintiff as class representative. *See Morgan v. Caliber Home Loans, Inc.*, No. 8:19-cv-02797-PX, 2020 U.S. Dist. LEXIS 101648, at *11 (D. Md. June 10, 2020), *rev'd in part on other grounds*, 26 F. 4th 643 (4th Cir. 2022) ("[E]ach liability theory fails as a matter of law with respect to the named Plaintiffs, and the Complaint does not aver any independent theory of class-wide relief separate from the Plaintiffs' as representatives of the putative classes. Accordingly, the class allegations fail for the same reasons the individual claims do."). Because no class member can assert a viable claim, the class is unsustainable, and the class claims should be dismissed.

23

## CONCLUSION

WHEREFORE, Defendants NewRez LLC d/b/a Shellpoint Mortgage Servicing and Terwin Mortgage Trust 2005-3SL, by U.S. Bank National Association, respectfully request that this Court dismiss Plaintiff's Class Action Complaint.

This the 20th day of May, 2025.

McGuireWoods LLP

By: /s/ Jasmine K. Gardner
    Jasmine K. Gardner
    North Carolina Bar No. 47853
    201 N. Tryon Street, Suite 3000
    Charlotte, North Carolina 28202
    Telephone: (704) 343-2262
    Facsimile: (704) 373-8825
    Email: jgardner@mcguirewoods.com

*Counsel for Defendants NewRez LLC d/b/a Shellpoint Mortgage Servicing and Terwin Mortgage Trust 2005-3SL, by U.S. Bank National Association as Trustee*

24

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(1), I certify that the foregoing brief is 5,989 words, excluding the caption, table of contents, table of authorities, signature lines, certificate of compliance, and certificate of service.

This the 20th day of May, 2025.

MCGUIREWOODS LLP

By:  /s/ Jasmine K. Gardner
     Jasmine K. Gardner
     North Carolina Bar No. 47853
     201 N. Tryon Street, Suite 3000
     Charlotte, North Carolina 28202
     Telephone: (704) 343-2262
     Facsimile: (704) 536-2324
     Email: jgardner@mcguirewoods.com

*Counsel for Defendants NewRez LLC d/b/a Shellpoint Mortgage Servicing and Terwin Mortgage Trust 2005-3SL, by U.S. Bank National Association as Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of May 2025, I caused the foregoing **DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS CLASS ACTION COMPLAINT**, and all attachments thereto, to be electronically filed with the Clerk of the Court via the Court's CM/ECF system. Counsel for all parties in this case are registered CM/ECF users and will be served by the Court's CM/ECF System.

*/s/ Jasmine K. Gardner*
Jasmine K. Gardner

***Counsel for Defendants NewRez LLC d/b/a Shellpoint Mortgage Servicing and Terwin Mortgage Trust 2005-3SL, by U.S. Bank National Association as Trustee***