```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

GREGORY TUTTLE, on behalf of   )
himself and all others         )
similarly situated, and SARAH  )
TUTTLE,                        )
                               )
            Plaintiffs,         )
                               )
      v.                       )       1:25CV223
                               )
NEWREZ, LLC d/b/a SHELLPOINT   )
MORTGAGE SERVICING, and        )
TERWIN MORTGAGE TRUST          )
2005-3SL, by U.S. Bank         )
National Association as        )
Trustee,                       )
                               )
            Defendants.         )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This is an action involving a second mortgage on a home. Before the court is the motion (Doc. 17) by Defendants Newrez LLC[1] d/b/a Shellpoint ("Shellpoint") and Terwin Mortgage Trust 2005-3SL, by U.S. Bank National Association as Trustee (the "Trust"), to dismiss Plaintiffs Gregory and Sarah Tuttle's amended complaint (Doc. 14) (the "complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is fully briefed and ready for decision. (Docs. 17-1, 19, 20.) For the reasons set forth below, the motion will be granted and the complaint dismissed.

---

[1] The amended complaint and case caption refer to "Newrez, LLC."

I.  BACKGROUND

The well-pleaded allegations in the complaint, viewed in the light most favorable to the Tuttles as the non-moving parties, show the following:

Plaintiffs Gregory and Sarah Tuttle built their home in Yadkinville, North Carolina, in 1999. (Doc. 14 ¶ 45.)  In 2005, they refinanced it with an 80/20 mortgage structure, where a primary mortgage covered approximately 80% of the home's value and a secondary mortgage covered the remaining 20%. (Id. ¶¶ 46-47.) Mr. Tuttle was the sole signatory to the note for the second mortgage. (Id. ¶ 49.)

The second mortgage was secured by a Deed of Trust dated January 21, 2005 (Doc. 17-1 at 30), which both Tuttles signed as borrowers. (Doc. 14 ¶50.) It was serviced by Specialized Loan Servicing, LLC ("SLS") from at least 2005 until July 2024, when Shellpoint merged with SLS and assumed the servicing obligations. (Id. ¶ 52.)

The Tuttles filed for Chapter 7 bankruptcy in September 2006. (Id. ¶ 53.)  Mr. Tuttle stopped receiving monthly statements for the second mortgage that same month. (Id. ¶ 54.)  In bankruptcy, Mr. Tuttle filed a "Statement of Intention" that he would retain his interest in his home and continue to pay the first and second mortgages under agreed-upon terms. (Id. ¶ 55.)

Mr. Tuttle's personal obligation under the second loan was

2

discharged in January 2007. (Id. ¶ 56.) Mr. Tuttle modified the terms of both mortgages in December 2007, reaffirming the debt. (Id. ¶ 57.) Mr. Tuttle subsequently defaulted on the second mortgage, and SLS confirmed that it had charged off the second mortgage in April 2009. (Id.)

In April 2018, the Consumer Financial Protection Board updated the regulations for the Truth in Lending Act, 15 U.S.C. 1601 et seq. ("TILA"), by amending "Regulation Z" to require loan servicers to provide post-bankruptcy consumers with monthly statements absent a specified exemption. (Doc. 14 ¶ 36; see 12 C.F.R. § 1026.41(e)(5)(i).) That same month, SLS sent Mr. Tuttle a letter informing him that he qualified under the new regulation to "begin receiving a new monthly statement beginning in April 2018." (Doc. 14 ¶¶ 59-61.) At some unspecified point thereafter, Mr. Tuttle began receiving statements on the second mortgage.[2] (Id. ¶ 64.) The statements indicated that he owed retroactive interest and fees on his mortgage, which added approximately $20,000 to the $54,000 outstanding principal balance of the loan. (Id. ¶¶ 48, 56, 64.) Mr. Tuttle alleges that retroactive fees and interest were assessed "for periods in which he had not received statements," but does not specify whether the periods in question

---

[2] Mr. Tuttle alleges that he "continued to receive no monthly statements from SLS regarding his second mortgage, including after April 2018." (Id. ¶ 62.) However, he does not indicate how long this occurred.

3

were before or after the April 2018 regulation change. (Id. ¶ 65.)

In May 2023, SLS sent a notice of default addressed to Mr. Tuttle (but not Ms. Tuttle) at their residence, threatening foreclosure if he failed to pay the full statement balance, including the retroactively assessed fees and interest. (Id. ¶¶ 66, 69.) In late 2023, the Trust, as owner of the mortgage debt, commenced foreclosure proceedings and sent correspondence to Mr. Tuttle informing him of the foreclosure. (Id. ¶ 70.) As a result of the foregoing, Plaintiffs allege they have suffered damages including "lost equity of approximately $20,000 [] which Shellpoint retroactively assessed as interest, as well as the significant emotional distress of facing the loss of their family home if they do not pay[.]" (Id. ¶ 72.)

The Tuttles commenced the present action asserting claims under the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50 et seq. ("NCDCA") (Counts 1 through 4 and 7), a claim under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq. ("UDTPA") (Count 8), a claim for a declaratory judgment under 28 U.S.C. § 2201 (Count 5), and a state law breach of contract claim (Count 6).

**II. ANALYSIS**

   **A. Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim

4

showing that the pleader is entitled to relief." A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570; see also Iqbal, 556 U.S. at 678. Thus, mere legal conclusions should not be accepted

5

as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

   **B. NCDCA Claims (Counts 1 through 4 and 7)**

Defendants argue that the NCDCA claims should be dismissed because they are based solely on Defendants' assessment of interest on the second mortgage loan at times when no periodic statements were being sent. (Doc. 17-1 at 15.) As Defendants note, the obligation to issue periodic statements to consumers in bankruptcy arises under the TILA and its enacting regulations. (Id.; see 15 U.S.C. § 1638(f); 12 C.F.R. § 1026.41(e)(5).) However, the TILA extends liability only to "creditors" and explicitly exempts loan servicers (like Shellpoint/SLS) and assignees of creditors (like the Trust) from liability in most cases. See 15 U.S.C. § 1641(e) (requiring the assignment to be voluntary and the violation to be "apparent on the face of the disclosure statement") and (f) (exempting servicers unless they are also an owner of the obligation).[3] Thus, Defendants contend that the Tuttles' NCDCA

---

[3] Plaintiffs represent that "TILA requires mortgage lenders and servicers to send consumers a statement once per billing cycle." (Doc. 19 at 9.) Plaintiffs cite 15 U.S.C. § 1637(b) and 12 C.F.R. § 1026.5(b)(2), provisions that apply to open ended consumer credit plans, not home mortgages. However, a different subsection of TILA and Regulation Z both require servicers of home mortgages to provide a statement once per billing cycle. 15 U.S.C. § 1638(f)(1) ("The creditor, assignee, or servicer with respect to any residential mortgage loan shall transmit to the obligor, for each billing cycle, a statement . . ."); 12 C.F.R. § 1026.41(a)(2) ("A servicer of a transaction subject to this section shall provide the consumer, for each billing cycle, a periodic statement

6

claims are an indirect attempt to enforce a non-existent TILA claim. (Doc. 17-1 at 16-17.)

The Tuttles, in apparent recognition of the servicer's exemption from liability here, contend that their NCDCA claims are not predicated on Defendants' failure to provide periodic statements in violation of the TILA, but rather on their attempts to collect interest and fees to which they were not entitled. (Doc. 19 at 10-11.) The Tuttles cite cases for the proposition that periodic billing statements can be actionable under the NCDCA as an attempt to collect a debt. (Id. at 9-10 (citing Daniels v. Select Portfolio Servicing, Inc., 34 F.4th 1260, 1271 (11th Cir. 2022); Lipford v. Specialized Loan Servicing, LLC, 2024 WL 3760752, at *4 (E.D. Va. Aug. 12, 2024); and Lamirand v. Fay Servicing, LLC, 38 F.4th 976, 980 (11th Cir. 2022).) Additionally, they argue that Mr. Tuttle's individual NCDCA claim (Count 7) relates to other debt collection attempts, including the mailing of pre-foreclosure notices. (Id. at 12.)

Defendants reply that the interest and fees that underly all of the Tuttles' NCDCA claims are only alleged to be unlawful under the TILA. (Doc. 20 at 7-8.) Thus, they contend that the Tuttles' NCDCA claims, including the individual claim in Count 7, are all

---

. . ."). So, while Section 1638 and Regulation Z impose this requirement on servicers, the sections creating liability, 15 U.S.C. §§ 1640 and 1641, generally restrict it to creditors and explicitly exempt servicers from liability unless they also own the loan as an assignee.

7

dependent on nonactionable TILA violations and therefore subject to dismissal. (Id. at 10.) Further, they correctly note that all of the Tuttles' cases are inapposite, because the question of whether periodic billing statements can be attempts to collect a debt under the NCDCA is not at issue here. (Id. at 9.)

When construing a state statute, a federal court looks to the decisions of the highest court of the state. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). If there are no governing opinions from the Supreme Court of North Carolina, the court "must anticipate how it would rule." See Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020) (internal quotation marks and citation omitted). To that end, the federal court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (internal quotation marks and citation omitted).

As Defendants note (Doc. 20 at 7), the Tuttles do not cite any North Carolina statute or case that would establish independent liability for fees and interest assessed on a mortgage during periods where no statements were sent. Neither the Supreme Court of North Carolina nor the North Carolina Court of Appeals has ever considered whether a TILA violation of the type alleged here can give rise to liability under the NCDCA or any other North Carolina law. However, the North Carolina Court of Appeals has looked to

8

federal interpretations of the Fair Debt Collection Practices Act (the "FDCPA"), which is the NCDCA's federal counterpart,[4] when construing the NCDCA in other contexts. See, e.g., Reid v. Ayers, 531 S.E.2d 231, 233-34 (N.C. Ct. App. 2000). There is no reason to conclude North Carolina courts would do otherwise here.

Courts have consistently rejected attempts to enforce the TILA against non-creditors using the FDCPA. For example, in Neff v. Cap. Acquisitions & Mgmt. Co., 238 F. Supp. 2d 986, 992-93 (N.D. Ill. 2002), aff'd, 352 F.3d 1118 (7th Cir. 2003), the court rejected the plaintiff's claim that the non-creditor defendants violated the FDCPA through efforts to collect interest when no periodic statements had been furnished. The court held that "there is no affirmative obligation under the FDCPA to send monthly statements, and [plaintiff] does not allege deceptive or unfair practices independent of defendants' alleged TILA obligations." Accord Lee v. Northland Grp., No. 02-c-6083, 2003 WL 25765398, at *1 (N.D. Ill. 2003) ("[Plaintiff]'s FDCPA . . . claims are entirely predicated on her nonexistent TILA violation, and thus those claims

---

[4] Compare N.C. Gen Stat. § 75-54(2) (forbidding false representation of "the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding") with 15 U.S.C. § 1692e(2) (forbidding false representation of "the character, amount, or legal status of any debt"); compare also N.C. Gen. Stat. § 75-55(4) (forbidding collection of "any interest or other charge, fee or expense . . . unless legally entitled to such fee or charge") with 15 U.S.C. § 1692f(1) (forbidding collection of "any interest, fee, charge, or expense . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law").

9

must also be dismissed."). Indeed, multiple courts have reached similar conclusions in parallel litigation involving repackaged TILA claims against Shellpoint. See Linderman v. NewRez LLC, No. 25-cv-04271, 2025 WL 3037795 (N.D. Ill. Oct. 31, 2025); Cole v. NewRez LLC, No. 25-cv-04265 (N.D. Ill. Dec. 17, 2025);[5] Hodges v. NewRez LLC, No. 25-cv-10147, 2026 WL 194652 (D. Mass. Jan. 6, 2026).

Here, the Tuttles concede that the NCDCA and FDCPA serve the same purpose. (Doc. 19 at 9.) Nevertheless, the Tuttles argue that their NCDCA claims are distinguishable from existing FDCPA caselaw because the claims in the present case are not "entirely predicated on a failure to send statements." (Id. at 10-11.) But the substance of their complaint belies this argument. The alleged NCDCA violations in Counts 1 through 4 all arise from Defendant's representations of interest and fees, or efforts to collect the same, for "months that [Plaintiffs] were not sent monthly statements." (Doc. 14 ¶¶ 80-81, 92-93, 104-105, 117-118.) Similarly, Mr. Tuttle's individual NCDCA claim in Count 7 rests on an "inaccurate balance" and "inflated amount to cure the default" that appeared on the notice of foreclosure he received from Defendants. (Id. ¶¶ 145-48.) The alleged inaccuracy and inflation are based exclusively on Defendants' assessment of fees and

---

[5] A copy of this unreported case was filed by Defendants. (Doc. 31-1.)

interest for months that the Tuttles were not sent monthly statements — in other words, on a nonactionable TILA violation. (See id. ¶¶ 65-66.)

Because the Tuttles have failed to allege any conduct that would violate the NCDCA independent of Defendant's putative TILA violations, Counts 1 through 4 and 7 of the complaint will be dismissed.

### C. UDTPA Claim (Count 8)

Defendants likewise argue that Count 8 fails to state a claim under the UDTPA because it is based on the same nonactionable TILA violation as the NCDCA claims. (Doc. 17-1 at 18-19 (citing Register v. N. Sun Hous. & Dev., Inc., No. 7:04-cv-68-FL, 2005 WL 8159532, at *10 (E.D.N.C. 2005), aff'd sub nom. Reg. v. Flagstar Bank, 205 F. App'x 154 (4th Cir. 2006).) The Tuttles respond that the UDTPA claim is not based Defendants' failure to send monthly statements, but rather on their "unfair and deceptive foreclosure attempts." (Doc 19 at 12-13.) Defendants reply that this claim, like the others, is based on Defendants' alleged assessment of fees and interest at times when monthly statements were not sent. (Doc. 20 at 10-11.)

Once again, the face of the complaint belies the Tuttles' argument. Count 8 alleges:

> "[In] seeking payment of amounts exceeding $100,000 and conducting a foreclosure sale of Plaintiff's home without having sent him monthly mortgage statements, [Defendants]

11

> violated TILA[6] . . . [which], in turn, "violated North Carolina's unfair and deceptive trade practices statute, N.C. Gen. Stat. § 75-1.1 et seq."

(Doc. 14 ¶¶ 155-56.) Because the UDTPA claim is based upon nonactionable violations of the TILA, it fails as a matter of law. See Register, 2005 WL 8159532, at *10. Therefore, Count 8 of the complaint fails to state a claim and will be dismissed.

### D. Breach of Contract (Count 6)

Defendants argue that the Trust's alleged breach of the deed of trust is predicated on the same nonactionable TILA violations as the previous claims. (Doc. 17-1 at 19-20 (citing Penner v. Chase Bank USA, N.A., 2006 WL 2192435, at *5 (W.D. Wash. 2006).) They further argue that the Tuttles have failed to allege actual damages, as there is no allegation that they have paid the "fees and costs" they allegedly do not owe, no allegation that they could have paid the lesser amount they claim to owe, and no allegation of any transfer or sale to support their assertion of "lost equity." (Id. at 20-22.) Finally, they argue that the deed of trust did not require a default notice to be sent to Ms. Tuttle, because she did not sign the corresponding note and thus was not personally liable as a borrower. (Id. at 22-23.) Alternatively, they contend that Ms. Tuttle was properly notified by the default

---

[6] Paragraph 155 of the complaint further alleges that the same conduct violated an undefined "DCSA," perhaps an errant reference to Indiana's Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-1 et seq. (Doc. 14 ¶ 155.)

12

notice sent to Mr. Tuttle. (Id. at 23 n.8.)

The Tuttles respond that the alleged breach is not predicated on a TILA violation, but on a defective default notice that "vastly overstated the amount of [the] debt and therefore did not comply with [the] Deed of Trust." (Doc. 19 at 14.) They contend that the mere assessment of foreclosure fees constitutes lost equity, because "if [Plaintiffs] were to try to refinance or payoff their mortgage today, they would have to pay those fees." (Id. at 15.) They also note that a foreclosure proceeding is pending against their home and cite cases where homeowners in similar circumstances were allowed to seek prospective relief. (Id. (citing Mathews v. PHH Mortg. Corp., 724 S.E.2d 196 (Va. 2012); Blick v. Shapiro & Brown, LLP, No. 3:16-cv-00070, 2017 WL 8774286, at *2 (W.D. Va. Jan. 25, 2017).) Finally, they argue that the language of the deed of trust shows that Ms. Tuttle was a "borrower" entitled to receive a default notice. (Id. at 16-17.)

Defendants reply that the "vastly overstated" amount that appears on the notice of default is yet another reiteration of the same nonactionable TILA violation that underlies the Tuttles' other claims. (Doc. 20 at 11-12.) Further, they argue that a merely "pending" foreclosure is insufficient to show lost equity or other damages. (Id. at 12 (citing Jaldin v. ReconTrust Co., N.A., 539 F. App'x 97, 101 (4th Cir. 2013).) Thus, they reason, even if Ms. Tuttle was entitled to a default notice, she cannot

13

show that she suffered any damage in not receiving it. (Id. at 13.)

The deed of trust, by its own terms,[7] is governed by North Carolina law. (Doc 17-1 at 32, ¶ 13.) In North Carolina, a claim for breach of contract requires only (1) the existence of a valid contract and (2) a breach of the terms of that contract; proof of damages is not required. See Poor v. Hill, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000). A plaintiff who establishes both elements is entitled "to nominal damages at least." Bryan Builders Supply v. Midyette, 162 S.E.2d 507, 511–12 (N.C. 1968). However, a breach of contract is only actionable if it is material, "one that substantially defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to perform." Crews v. Crews, 826 S.E.2d 194, 199 (N.C. Ct. App. 2019).

Here, no party disputes that the deed of trust is a valid contract. Thus, the court must determine whether the Tuttles have adequately alleged that Defendants breached its terms, either by

---

[7] Under limited circumstances, a court may consider documents beyond the complaint without converting a motion to dismiss into one for summary judgment. Goldfarb v. Mayor & City Council of Balt., 791 F.3d 500, 508 (4th Cir. 2015); Fed. R. Civ. P. 12(d) (limiting consideration of matters outside of the pleadings on 12(b)(6) motion). A court may properly consider documents that are "explicitly incorporated into the complaint by reference." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). Here, both the deed of trust (Doc. 17-1 at 30-35) and the notice of default (id. at 37-39) are expressly incorporated into the complaint by reference. (Doc. 14 ¶¶ 135-36.)

14

overstating the amount owed in the default notice that was mailed to Mr. Tuttle, or by failing to send a default notice to Ms. Tuttle.

With respect to the first alleged breach, the Tuttles have not alleged sufficient facts to show that the default notice was "defective because it listed an incorrect amount due on the loan." (Doc. 14 ¶ 136.) Their complaint indicates neither the amount that appeared on the default notice nor the lesser amount that they believe should have appeared. Plaintiffs rely entirely on Defendants' putative violations of the TILA to show that the amount was excessive. (Id. ("Specifically, [the amount] included interest and/or late fees that Plaintiff did not owe because he was not being sent monthly statements.").) The Trust is also exempt from TILA liability as an assignee because the alleged violation (failure to send statements) was not apparent on the face of the disclosures the Trust received when it acquired the loans from the originating lender. 15 U.S.C. § 1641(e)(1)(A). Thus, the alleged breach simply repackages the same unactionable conduct that serves as the basis of the Tuttles' other claims.

As to the second alleged breach, the Trust's alleged failure to notify Ms. Tuttle as a condition precedent to foreclosure is an issue that would seem to be more properly raised in the pending foreclosure proceeding, rather than before this court. Nevertheless, the claim appears to be meritless. Admittedly,

Defendants' argument that Ms. Tuttle was not entitled to receive a notice is unpersuasive. (Doc. 17-1 at 22-23.) The deed of trust plainly defines "Borrower" as "Gregory Dwayne Tuttle and Sarah Leandra A. Tuttle, Husband and Wife" and requires notices to be sent "by certified mail <u>addressed to Borrower</u>" prior to acceleration. (<u>Id.</u> at 30, 32 (emphasis added).) Thus, Ms. Tuttle was entitled to notice before the Trust commenced foreclosure proceedings. However, the Trust's failure does not appear to rise to the level of a material breach. The notice of default was delivered to Mr. Tuttle, Ms. Tuttle's husband and co-borrower, at the same property address. (Doc. 14 ¶ 66; <u>see</u> Doc. 17-1 at 37.) Plaintiffs do not allege that Ms. Tuttle was unaware of the impending foreclosure, or that she would have acted differently had her name been included on address line. In short, the Trust's failure to properly address the notice of default appears to be a non-material breach, one that neither "substantially defeats the purpose of the agreement [nor] goes to the very heart of the agreement, [or] can be characterized as a substantial failure to perform." <u>Crews</u>, 826 S.E.2d at 199.

Because Plaintiffs have failed to allege any facts that, if proven, would constitute a material breach of the deed of trust, Count 6 of the complaint will be dismissed.

    **E.    Declaratory Judgment (Count 5)**

Defendants argue that because the Tuttles' substantive claims

16

Case 1:25-cv-00223-TDS-LPA     Document 33     Filed 02/23/26     Page 16 of 18

have been dismissed, their claim for declaratory relief under 28 U.S.C. § 2201 lacks a viable underlying cause of action and thus fails as a matter of law. (Doc. 17-1 at 23-24. (citing Laws v. Priority Tr. Servs. of N.C., 610 F. Supp. 2d 528, 532 (W.D.N.C. Mar. 16, 2009)).) The Tuttles respond that they have alleged a real and immediate controversy, namely, whether Defendants have waived the right to collect fees and interest assessed during periods when statements were not sent to borrowers. (Doc. 19 at 18-19.)

The Declaratory Judgment Act provides that the court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). However, "a request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred." CGM, LLC v. BellSouth Telecomm., Inc., 664 F.3d 46, 55-56 (4th Cir. 2011). Because the Tuttles have no surviving substantive claims, Count 5 of the complaint fails as well, and it will be dismissed.

**F. Class Allegations**

The Tuttles argue finally that no basis exists to strike Mr. Tuttle's class claims and that, in any event, doing so now, before discovery, would be premature. (Doc. 19 at 19.) However, as Defendants correctly argue (Doc. 20 at 15), where the underlying substantive claims are dismissed, the class claims lack any

17

predicate and should also be dismissed. Sullivan v. Lab Corp. of Am. Holdings, No. 1:17cv193, 2018 WL 1586471, at * 12 (M.D.N.C. 2018); Stewart v. Legal Helpers Debt Resolution, PLLC, No. 2:11CV26, 2014 WL 31797, at *1 (W.D.N.C. Jan. 6, 2014) ("As a general rule, when the named plaintiff in a class action settles his or her individual claims or they become moot prior to the district court certifying a class, the district court should dismiss the class claims as moot because there is no case or controversy under Article III of the United States Constitution."). Therefore, the dismissal of Mr. Tuttle's individual claims, for which he was the only proposed class representative, dooms his putative class claims, and they fail to prevent dismissal of the complaint.

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (Doc. 17) is GRANTED and the amended complaint (Doc. 14) is DISMISSED.

/s/   Thomas D. Schroeder
United States District Judge

February 23, 2026